UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>PRINCETON BROWN,<br><br>                    Defendant. | Case No. CR19-106-RSL<br><br>ORDER DENYING<br>DEFENDANT'S MOTION<br>FOR COMPASSIONATE<br>RELEASE |

This matter comes before the Court on defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. # 218). Having considered the motion and the record contained herein, the Court finds as follows:

## I.    Procedural Motions

As an initial matter, the Court finds compelling reasons justify sealing defendant's records containing sensitive information (Dkts. # 220, 228, 232, 236). The parties' motions to seal (Dkts. # 219, 227, 231, 235) are accordingly GRANTED. The government's motion to file an overlength brief (Dkt. # 225) is also GRANTED.

## II.    Background

Defendant is a 44-year-old inmate currently incarcerated at Terminal Island Federal Correctional Institution ("Terminal Island"). See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 16, 2022). On February 3, 2020, defendant pleaded guilty to attempted possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), as well as possession of a firearm in furtherance of drug

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 1

trafficking in violation of 21 U.S.C. § 924(c)(1)(A). Dkt. # 81. On April 15, 2022, this Court

sentenced defendant to a term of 60 months and 1 day of imprisonment and a three-year term of

supervised release. Dkt. # 178 at 2-3. Defendant reported to Terminal Island on August 22,

2022. Dkt. # 218 at 3. He is currently scheduled for release from the custody of the Federal

Bureau of Prisons ("BOP") on October 22, 2025. See Find an Inmate, Fed. Bureau of Prisons,

https://www.bop.gov/inmateloc/ (last visited Dec. 16, 2022).

### III.   Legal Framework

"A federal court generally 'may not modify a term of imprisonment once it has been

imposed.'" Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)).

Congress has provided an exception to that rule, known as compassionate release, which allows

the Court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c);

see also United States v. Aruda, 993 F.3d 797, 799 (9th Cir. 2021); United States v. Keller, 2

F.4th 1278, 1281 (9th Cir. 2021). The First Step Act of 2018 amended the procedural

requirements governing compassionate release. Prior to the First Step Act's passage, only the

Director of the BOP could bring motions for compassionate release. Now, under the First Step

Act, defendants are permitted to directly petition the Court for compassionate release. As

amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not
> modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of
>>> Prisons, or upon motion of the defendant after the defendant
>>> has fully exhausted all administrative rights to appeal a failure
>>> of the Bureau of Prisons to bring a motion on the defendant's
>>> behalf or the lapse of 30 days from the receipt of such a
>>> request by the warden of the defendant's facility, whichever
>>> is earlier, may reduce the term of imprisonment (and may
>>> impose a term of probation or supervised release with or
>>> without conditions that does not exceed the unserved portion
>>> of the original term of imprisonment), after considering the
>>> factors set forth in section 3553(a) to the extent that they are
>>> applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; . . .

(ii) . . .

and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Before passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). In doing so, Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id. The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

**Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; . . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

**Commentary**

**Application Notes:**

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2),

extraordinary and compelling reasons exist under any of the circumstances set forth below:

**(A) Medical Condition of the Defendant—**

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

. . . .

**(C) Family Circumstances—**

(i) The death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner

**(D) Other Reasons**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 4

**2. Foreseeability of Extraordinary and Compelling Reasons.**— For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment.  Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

**3. Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

. . . .

U.S.S.G. § 1B1.13. The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." Aruda, 993 F.3d at 798, 802. The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but it is not binding. Id.

## IV.   Defendant's Characteristics

In deciding whether to grant defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1), the Court first considers whether defendant has met the statutory exhaustion requirement for compassionate release. If the exhaustion requirement is met, the Court turns to three substantive considerations that govern compassionate release analysis: (1) whether "extraordinary and compelling reasons warrant such a reduction," (2) whether a reduction would be "consistent with *applicable* policy statements issued by the Sentencing Commission," and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a). See United States v. Wright, 46 F.4th 938, 945 (9th Cir. 2022) (emphasis in original) (internal citations and quotations omitted). "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." Id.

### A. Exhaustion Requirement

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 5

1   The Court first determines whether defendant has met the statutory exhaustion

2   requirement. Where, as here, the Director of the BOP has not filed the motion on defendant's

3   behalf, the Court may only consider the motion if defendant has requested that the BOP make

4   such a motion and either (i) defendant has "fully exhausted all administrative rights to appeal a

5   failure of the [BOP] to bring a motion on the defendant's behalf," or (ii) 30 days have elapsed

6   since the "warden of the defendant's facility" received a compassionate-release request from

7   defendant. Keller, 2 F.4th at 1281 (quoting 18 U.S.C. § 3582(c)(1)(A)). Defendant's attorney

8   submitted a request for compassionate release to the Warden at Terminal Island on August 24,

9   2022. Dkt. # 220 at 2-3. Defendant supplemented the request on September 6, 2022. Id. at 9-10.

10   On September 30, 2022, the Warden denied the request, finding that defendant had "not

11   identified extraordinary or compelling circumstances" and that defendant does not "meet the

12   criteria based on medical circumstances," as "medical records indicate [defendant is] generally

13   independent with instrumental activities of daily living." Dkt. # 228 at 6. The government does

14   not argue that defendant has failed to satisfy the exhaustion requirement. See Dkt. # 226. The

15   Court therefore considers the merits of defendant's motion for compassionate release.

16   ### B.  "Extraordinary and Compelling" Circumstances

17   The Court next considers whether "extraordinary and compelling reasons warrant such a

18   reduction" in defendant's term of imprisonment. 18 U.S.C. § 3582(c)(1)(A). Defendant puts

19   forward two potential bases for the Court to find "extraordinary and compelling reasons"

20   justifying his release: (1) his medical conditions and (2) his caregiving duties to his daughter.

21   Dkt. # 218. The Court analyzes each in turn.

22   #### 1.  Medical Conditions

23   ##### a.  Ongoing Medical Conditions

24   Defendant's medical records establish that he has sarcoidosis,[1] asthma, and allergies, as

25   well as ongoing pain that appears to be related to his gunshot injury. See generally Dkt. # 236.

26

27

28   [1] "Sarcoidosis is a condition that develops when groups of cells in your immune system form red
and swollen (inflamed) lumps, called granulomas, in various organs in the body." What Is Sarcoidosis?,

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 6

Defendant's motion makes numerous references to "testing" he underwent in the months leading up to his reporting date at Terminal Island and appears to suggest there is a possibility that he is afflicted by other, as yet undiscovered, ailments. <u>See</u> Dkt. # 218 at 3-4, 7-8. However, the Court limits its analysis to those medical issues presently supported by medical diagnoses or documentation.

Defendant's primary argument with regard to these ongoing medical conditions is that Terminal Island has not provided him with the medication he needs to treat these chronic issues. Dkt. # 218 at 5; Dkt. # 233. However, defendant's complaints appear to be premature. His most recent complaint with regard to his medication appears to be from October 31, 2022. Dkt. # 233 at 8. His BOP medical records show that in recent months he has been seen by physicians within Terminal Island for multiple "Medication Reconciliation" appointments,[2] and has been prescribed baclofen, budesonide/formoterol, docusate sodium capsules, fluticasone propionate spray, folic acid, gabapentin, methotrexate sodium, montelukast sodium, and prednisone. Dkt. # 228 at 24-27, 29-35; Dkt. # 236 at 17-18. More recently, his gabapentin dose has been increased, he was re-prescribed a "Budesonide/Formoterol" inhaler, and he was also prescribed a Fluticasone/Salmeterol inhaler. Dkt. # 236 at 1-9, 12.

Defendant also argues that the ongoing medical issues relating to his gunshot wound should serve as a basis for compassionate release. He contends that corrective surgery "will never happen" in prison and that his physical therapy was "stopped in its tracks" due to his present term of incarceration. Dkt. # 218 at 7-8. However, defendant's arguments are undermined by his BOP medical records, which show that he was scheduled for a physical therapy consultation on October 14, 2022, <u>see</u> Dkt. # 236 at 18, and that he was examined by a

---

Nat'l Heart, Lung & Blood Inst. (Mar. 24, 2022), https://www.nhlbi.nih.gov/health/sarcoidosis (last visited Dec. 19, 2022).

[2] BOP medical records also show that during one of these initial "medication reconciliation" appointments, "patient's known medication list including OTC [over the counter] items was compiled and compared to new and changed BOP orders." Dkt. # 228 at 32.

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 7

1  urology specialist who recommended a cystoscopy and removal of the bullet fragment
2  (scheduled for November 16, 2022), id. at 15.

3        In light of the actions taken by Terminal Island to address defendant's medical
4  conditions, the Court finds defendant has not established that his chronic issues cannot be
5  adequately addressed by the medical staff at Terminal Island. As one district court has observed:
6  "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is
7  not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to
8  recover from. Chronic conditions that can be managed in prison are not a sufficient basis for
9  compassionate release." United States v. Weidenhamer, No. CR16-1072-ROS, 2019 WL
10 6050264, at *5 (D. Ariz. Nov. 8, 2019); see also United States v. Allen, No. CR17-0229-TOR,
11 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019).

12                          **b.  COVID-19**

13       Defendant also argues that the risk of contracting COVID-19 provides another
14 "extraordinary and compelling reason" justifying compassionate release. Dkt. # 218 at 4, 7-8.
15 Specifically, defendant argues that (1) he has not been vaccinated against COVID-19 due to an
16 "auto immune disease" that makes him "more vulnerable to another round of COVID," id. at 4,
17 7; (2) "his BMI index . . . puts him at a high risk," id. at 4; and (3) the "close quarters of prison
18 life increases the risk of a bad outcome for him," id. at 7.

19       As an initial matter, the Court notes that although the impact of the COVID-19 pandemic
20 on detention facilities is, of course, concerning, "the mere existence of COVID-19 in society and
21 the possibility that it may spread to a particular prison alone cannot independently
22 justify compassionate release, especially considering BOP's statutory role, and its extensive and
23 professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d
24 Cir. 2020). Furthermore, "for the vast majority of prisoners, the availability of a vaccine makes
25 it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason
26 for immediate release." United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021).

27
28
ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 8

Turning to defendant's first argument, the Court does not find conclusive support in defendant's medical records for the assertion that he has an autoimmune disease.[3] Defendant's doctors noted in December of 2021 that he was being "work [sic] up for an autoimmune disease," Dkt. 220-1 at 11, however, defendant points to no diagnosis or conclusion that he was, in fact, diagnosed with a disease other than sarcoidosis. While the Court recognizes that sarcoidosis can be treated with medications that suppress the immune system[4] and that defendant's doctors noted he was "on immunocompromising medications," in July 2022, see Dkt. 220-1 at 15, it also notes that both the Centers for Disease Control and Prevention and the COVID-19 Treatment Guidelines Panel recommend COVID-19 vaccination for "all people who are moderately or severely immunocompromised."[5] Defendant has not articulated a clear argument as to why he has continued to refuse vaccination. While defendant is entitled to refuse the vaccine, the Court "need not treat his unvaccinated status as favoring compassionate release." See United States v. Anderson, No. 22-10007, 2022 WL 2828783, at *1 (9th Cir. July 20, 2022).

The Court acknowledges that defendant's obesity, Dkt. # 218 at 4, puts him at a higher risk for severe COVID-19 outcomes. See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals, CDC (Dec. 5,

---

[3] The Court recognizes that sarcoidosis is an autoimmune related disease that leads to inflammation in an afflicted person's immune system, see What Is Sarcoidosis?, Nat'l Heart, Lung & Blood Inst. (Mar. 24, 2022), https://www.nhlbi.nih.gov/health/sarcoidosis (last visited Dec. 19, 2022), but notes that defendant seems to suggest an additional autoimmune disease is at play. See, e.g., Dkt. # 218 at 7 (referring to defendant's "ongoing testing for sarcoidosis *and autoimmune disease*") (emphasis added).

[4] Sarcoidosis Treatment, Nat'l Heart, Lung & Blood Inst. (Mar. 24, 2022), https://www.nhlbi.nih.gov/health/sarcoidosis/treatment (last visited Dec. 19, 2022),

[5] COVID-19 Treatment Guidelines: Special Considerations in People Who Are Immunocompromised, Nat'l Inst. of Health (Dec. 1, 2022), https://www.covid19treatmentguidelines.nih.gov/special-populations/immunocompromised/; COVID-19: People Who Are Immunocompromised, Ctr. for Disease Control (Dec. 5, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-who-are-immunocompromised.html.

2022), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. It further acknowledges that many district courts – including this one – have recognized an increased risk of COVID-19 infection for incarcerated individuals. See United States v. Weems, No. CR15-89-RSL, 2021 WL 1968390, at *3 (W.D. Wash. May 17, 2021) ("COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable."). Additionally, like many other parts of the country,[6] Terminal Island is currently facing an increase in COVID-19 cases. See FCI Terminal Island, Bureau of Prisons, https://www.bop.gov/locations/institutions/trm/ (last visited Dec. 16, 2022) (indicating that Terminal Island is currently at "Level 3 Operations" based on its "COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations series, and . . . community transmission rate[]"); see also Dkt. # 239.

The Court is sympathetic to defendant's understandable concerns regarding potential COVID-19 infections. However, given the protection offered by COVID-19 vaccines and boosters,[7] the Court concludes that defendant has failed to establish that the virus poses an "extraordinary and compelling" reason justifying compassionate release.

### 2. Parental Responsibilities

Defendant's second ground for compassionate release is that he is the "sole available parent for his 11 year old daughter." Dkt. # 218 at 5. Specifically, defendant contends that his daughter's mother, Timika Sanford, has been involved in two serious automobile accidents and "is not ambulatory." Id. at 8. The Court notes that the BOP Policy Statement authorizes compassionate release only where a defendant can show that his spouse, registered partner, or caretaker of his minor children is "incapacitated," see U.S.S.G. § 1B1.13, Commentary § 1(C),

---

[6] See COVID Data Tracker Weekly Review, Ctr. for Disease Control (Dec. 16, 2022), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (noting that "COVID-19 cases, hospitalizations, and deaths have increased in recent weeks. More than 44% of U.S. counties are experiencing medium to high COVID-19 Community Levels.").

[7] COVID-19 Vaccines Are Effective, CDC (June 29, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/index.html.

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 10

1  and that "incapacitation" is defined as "suffered a severe injury (e.g., auto accident) or suffers

2  from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child,"

3  United States v. McKinney, No. CR18-096-RSM, 2020 WL 6076898, at *4-5 (W.D. Wash. Oct.

4  15, 2020) (citing Program Statement at 7). While this policy statement is not binding on the

5  Court, see Aruda, 993 F.3d at 798, 802, the Court looks to the statement as helpful guidance.

6      The government's main arguments against finding an "extraordinary and compelling

7  reason" here are (1) another caregiver exists – namely, Krystlyn Harrison,[8] the family friend

8  with whom defendant's daughter resided at the time his initial motion was filed, and (2) that

9  defendant fails to put forward evidence that Ms. Sanford is incapacitated. Dkt. # 226 at 18. As to

10  the government's first argument, defendant informed the court in a supplemental motion that

11  Ms. Harrison has recently passed away. Dkt. # 237 at 2. As to the government's second

12  argument, defendant's reply includes a declaration from Ms. Sanford, detailing the serious

13  injuries she sustained in her recent automobile accidents and her current limited mobility. Dkt.

14  # 232-1. Accordingly, the Court finds that Ms. Sanford qualifies as "incapacitated," and that no

15  substitute caregiver has been identified.

16      However, even assuming defendant could meet his burden in demonstrating that his

17  daughter's current situation constitutes an "extraordinary and compelling" reason, additional

18  considerations warrant denial of relief.

19  **C.  § 3553(a) Factors**

20      The Court must assess whether a sentence reduction would be consistent with any

21  applicable sentencing factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A);

22  see also Keller, 2 F.4th at 1284. Relevant factors include: (i) "the nature and circumstances of

23  the offense and the history and characteristics of the defendant," (ii) the need for the sentence

24  _____

25      [8] The Court notes that in defendant's initial motion, the family friend is referred to as "Krystlin

26  Harrison," Dkt. # 218 at 5; see also Dkt. # 218-1 at 3 (email from "Krystlyn Harrison"), while in the
   supplemental motion, she is referred to as "Krystlyn Walker," Dkt. # 347 at 2. The Court has confirmed

27  with defense counsel that both names reference a single individual (the different surnames reflect her
   maiden and married names, and the misspelling of her first name in the initial motion was merely a

28  typo).

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 11

imposed (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (2) to adequately deter criminal conduct and "to protect the public from further crimes of the defendant," and (3) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," (iv) the sentencing guidelines, and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a); see also United States v. Grimes, No. CR11-5509-BHS, 2021 WL 319404 (W.D. Wash. Jan. 26, 2021) (summarizing factors).

Here, the nature and circumstances of defendant's crime were quite serious. Defendant sold an undercover agent and confidential informant three stolen guns, organized a deal to buy $100,000 worth of cocaine, and arrived at the drug deal with a loaded gun. Dkt. # 157 at 3-4.

Defendant's criminal history and characteristics also cut against compassionate release. Defendant has three prior adult convictions for attempting to possess and possessing a firearm unlawfully, in addition to numerous convictions for other serious and violent crimes. Id. at 7-10. Furthermore, in connection with the instant offense, defendant paid an undercover agent $200 to destroy a car defendant believed was used in a hit and run. Dkt. # 172 at 8. While the Court acknowledges defendant's compliance with his conditions of supervision during pre-sentencing release, defendant's lengthy criminal history and numerous firearm offenses weigh heavily in the court's analysis.

Finally, the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment," all militate against compassionate release. Sentencing in this case was continued eight times due to the COVID-19 pandemic, and four additional times to allow for medical testing and treatment, as well as to accommodate defendant's family obligations. Dkt. # 226 at 9; see also Dkts. # 85, 91, 94, 121, 129, 147, 154, 156, 159, 160, 163, 167, 170. Defendant's reporting date was also extended in order for him to obtain medical treatment. Dkt. # 210. Then, two days after reporting to Terminal Island, defendant submitted this request for compassionate release. As of December 22, 2022,

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 12

defendant has served only 4 months of his five-year sentence. Given the seriousness of the instant offense and defendant's criminal history, granting defendant's motion under these circumstances would not reflect the seriousness of the offense or provide just punishment. Accordingly, the Court denies defendant's motion for compassionate release.

**IV.    Conclusion**

For all the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Defendant's motion for compassionate release (Dkt. # 218) is DENIED.

2.  Defendant's motions to seal (Dkts. # 219 & 231) are GRANTED.

3.  Government's motion to file an overlength brief (Dkt. # 225) is GRANTED.

4.  Government's motions to seal (Dkts. # 227 & 235) are GRANTED.

IT IS SO ORDERED.


DATED this 29th day of December, 2022.


*Mary S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 13