UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PRINCETON BROWN,<br><br>Defendant. | Case No. CR19-106-RSL<br><br>ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's second "Motion to Modify Sentence under 18 U.S.C. § 3582(c)" (Dkt. # 249). Having considered the parties' submissions and the record contained herein, the Court DENIES defendant's motion.

**I.   Procedural Motions**

The Court finds compelling reasons justify sealing defendant's records containing sensitive information (Dkt. # 257-1). The government's motion to seal (Dkt. # 256) is accordingly GRANTED. The government's motion to file an overlength brief (Dkt. # 255) is also GRANTED. And the defendant's motion for extension of time to file reply (Dkt. # 259) is GRANTED.

**II.   Background**

Defendant is a 45-year-old inmate currently incarcerated at Terminal Island Federal Correctional Institution ("Terminal Island"). *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 26, 2024). On February 3, 2020, defendant pleaded guilty to attempted possession of cocaine with intent to distribute in violation of 21

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 1

U.S.C. § 841(a)(1) and (b)(1)(C), as well as possession of a firearm in furtherance of drug trafficking in violation of 21 U.S.C. § 924(c)(1)(A). Dkts. # 81, 83. Defendant remained in custody at the SeaTac Federal Detention Center from the time of his arrest on May 23, 2019 to June 24, 2020, when the Court granted his motion for temporary release pending sentencing. Dkts. # 114, 116.

On April 15, 2022, this Court sentenced defendant to a term of 60 months and 1 day of imprisonment and a three-year term of supervised release. Dkt. # 178 at 2–3. Defendant reported to Terminal Island on August 22, 2022. Dkt. # 218 at 3. He is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on October 22, 2025. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 26, 2024).

### III. Legal Framework

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress has provided an exception to that rule, known as compassionate release, which allows the Court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). The statute states in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> > (A) the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> >
> > > (i) extraordinary and compelling reasons warrant such a reduction; . . .

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 2

> (ii) . . .
>
> and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

*Id*. Before passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. *See* 28 U.S.C. § 994(t). In doing so, Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> . . . .
>
> **(b) Extraordinary and Compelling Reasons**. —Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> **(1) Medical Circumstances of the Defendant.**—
>
> > (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). . .
> >
> > (B) The defendant is—

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 3

    (i) suffering from a serious physical or medical condition,

    (ii) suffering from a serious functional or cognitive impairment, or

    (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

  (D) The defendant presents the following circumstances—

    (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    (iii) such risk cannot be adequately mitigated in a timely manner.

. . .

**(3) Family Circumstances of the Defendant. —**

  (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

  (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 4

  (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

  (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. §1B1.13 (as amended in November 2023). With the passage of the updated sentencing guidelines, Section 1B1.13 is now applicable to defendant-initiated motions for compassionate release. *Id.*; *United States v. Brown*, No. CR16-0259JLR, 2023 WL 8650290, at *2 (W.D. Wash. Dec. 14, 2023).

### IV. Defendant's Characteristics

In deciding whether to grant defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1), the Court first considers whether defendant has met the statutory exhaustion requirement for compassionate release. If the exhaustion requirement is met, the Court turns to three substantive considerations that govern compassionate release analysis: (1) whether "extraordinary and compelling reasons warrant such a reduction," (2) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a). S*ee United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (internal citations and quotations omitted). "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *Id*.

Because the parties concede that the exhaustion requirement is met, *see* Dkts. # 257 at 9 n.13, 251-10, the Court first considers whether "extraordinary and compelling" reasons warrant a reduction of defendant's sentence. 18 U.S.C. § 3582(c)(1)(A).

### A. "Extraordinary and Compelling" Circumstances

Defendant argues that (1) his medical conditions and (2) his caregiving duties to his minor daughter are "extraordinary and compelling reasons" justifying a reduction in his sentence. Dkt. # 249. The Court analyzes each in turn.

#### 1. Medical Conditions

##### a. Chronic Conditions

Defendant's medical records establish that he has sarcoidosis, asthma, allergies, chronic sinusitis, polyneuropathy, skin eruptions, hematuria, and lower back pain that appears to be related to his gunshot injury, as well as other minor complaints like rashes. Dkts. # 251-4 at 53, 258 at 117. He makes two main arguments relating to his chronic conditions: (i) the Bureau of Prisons ("BOP") is inadequately managing his chronic conditions, and (ii) he requires two major surgeries, one that BOP failed to schedule despite his doctor's recommendation, and another that requires intensive aftercare. Dkt. # 249. The Court acknowledges the seriousness of defendant's conditions but finds that the record does not establish inadequate healthcare by BOP.

##### i. Ongoing Care

Defendant points to several examples of "inadequate" care at Terminal Island, Dkt. # 249 at 11–17, none which establish that BOP failed to provide "long-term or specialized medical care that . . . without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. §1B1.13(b)(1)(C).

First, he argues that BOP inappropriately terminated his prescription for Budesonide, a steroid rinse used to reduce inflammation caused by sinusitis. Dkt. # 249 at 5–6, 11, 13. However, defendant's BOP medical records reflect that in place of Budesonide, he was prescribed a Fluticasone/Salmeterol inhaler and Fluticasone nasal spray to manage inflammation. Dkt. # 258 at 131. It is unclear why defendant contends Budesonide is necessary or why the replacement prescriptions are insufficient. Absent such an argument, replacing

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 6

medication with what appears to be an equally effective alternative cannot support a conclusion that BOP failed to provide defendant with the necessary care.

Second, defendant argues that BOP is inconsistently administering his medications. For example, he argues that between May and September, he "did not receive prednisone at all." Dkt. # 249 at 8. BOP records show that administration was consistent with the ENT specialist's order which recommended starting defendant on an antibiotic and "tapering" him off prednisone. Dkts. # 251-4 at 18, 258 at 132. On September 15, defendant followed up with the specialist, who in turn recommended defendant resume taking prednisone, and BOP complied. *See* Dkt. # 258 at 132. Thus, the record does not support arbitrary or inconsistent administration of defendant's medications.

Third, defendant argues that BOP failed to manage side effects of medications like prednisone and methotrexate, Dkt. #249 at 6, yet he does not point to specific complications or side effects BOP failed to address. Defendant consulted a doctor or received treatment for various ailments almost every month since his incarceration at Terminal Island. *See generally* Dkts. # 251-4, 258. While the Court is aware of the potential risks that accompany certain prescription medications, it finds it unreasonable to conclude that the level of healthcare afforded by BOP is inadequate simply because BOP does not continuously monitor potential development of complications. *See e.g.*, *United States of America v. Gonzalez*, No. 23-634, 2024 WL 705711, at *1 (9th Cir. Feb. 21, 2024).

### ii. Surgeries

Defendant argues that he requires two major surgeries. First, he contends that surgery to remove bullet fragments or metal shards from his lower body is necessary, and BOP failed to schedule the surgery despite his doctor's orders. Dkt. # 249 at 6. Second, defendant is scheduled for surgery to address his chronic sinusitis (scheduled for October 31, 2023), which requires

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 7

intensive aftercare.[1] *Id.* at 14. Defendant argues that proper aftercare is not possible if he remains incarcerated. *Id.* The Court finds that neither reason justifies compassionate release.

As to the first surgery, the record does not establish that surgery is recommended or necessary. Defendant was first seen by a urologist who recommended a cystoscopy and "removal of bullet fragment [from] scrotum." Dkt. #251-4 at 5. A cystoscopy was performed on May 25, 2023, and the doctor found significant inflammation and "hanging tissue," but found "no foreign body . . . no bleeding points, ulceration, tumor, etc." Dkt. #251-4 at 27–28. The doctor made no recommendation for surgery to remove "bullet fragments." *Id.* On June 14, 2023, defendant underwent a testicular ultrasound related to the buckshot fragments. Dkt. #258 at 357. The physician observed what may be a ballistic fragment foreign body adjacent to the base of the penis but concluded that no further imaging or biochemical follow up was necessary absent any other risk factors for testicular cancer. *Id.* Thus, imaging and a cystoscopy confirmed that surgery was not necessary.

As to the second surgery, defendant fails to demonstrate how BOP would be incapable of providing him with the care necessary to aid in his recovery. Dkt. # 249 at 6. In fact, the record reflects that BOP can—and has—provided defendant with consistent, effective, and adequate care throughout his time at Terminal Island. Defendant does not put forth any evidence that would lead this Court to believe otherwise.[2]

In light of the actions taken by Terminal Island to address defendant's medical conditions, the Court finds defendant has not established that his chronic issues cannot be

---

[1] The Court is unaware whether defendant underwent surgery as scheduled. If defendant is still awaiting surgery, BOP is required to schedule defendant to undergo the surgery by the end of this year notwithstanding compelling reasons for further delay.

[2] While defendant's medical conditions do not rise to the level of "extraordinary and compelling" as to justify a reduction in his sentence, he may seek administrative remedies to address gaps in his healthcare. *See United States v. Avila*, No. CR18-5205 BHS, 2022 WL 3346351, at *3 (W.D. Wash. Aug. 12, 2022) ("If the healthcare [the defendant] receives is in fact inadequate, the remedy is not compassionate release but rather to pursue administrative remedies or to bring an Eighth Amendment claim in the district in which the prison is located.").

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 8

adequately addressed by the medical staff at Terminal Island. *See United States v. Woodberry*, No. 2:18-CR-00049-RAJ, 2022 WL 1803334, at *3 (W.D. Wash. June 1, 2022) ("chronic but manageable medical conditions alone do not constitute extraordinary and compelling circumstances.").

### b. COVID-19

Defendant also argues the risk of contracting COVID-19 provides another "extraordinary and compelling reason" justifying compassionate release. Dkt. # 249 at 11, 15. Specifically, he argues that his chronic health conditions, high BMI, and suppressed immune system make him especially vulnerable to contracting COVID-19. *Id.* at 4, 7, 14, 16–17. This Court previously rejected defendant's arguments, explaining that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," and that "the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." Dkt. #240 at 8–10. Defendant has not advanced any new or compelling theories for this Court to reconsider its conclusion, so it reaffirms its reasoning here.

### 2. Parental Responsibilities

Defendant next argues that his parental responsibilities are "extraordinary and compelling" reasons justifying his release. Specifically, he contends that his minor daughter's mother, Timika Sanford, is incapacitated and no alternative caregiver exists, making him the sole available caregiver. Dkt. # 249 at 9–10. The Court finds that defendant failed to meet his burden of showing that Sanford is incapable of caring for their minor daughter.

Case law in this area is sparse, so courts often look "to a Program Statement issued by BOP for guidance in reviewing requests based on . . . the incapacitation of the family member caregiver." *United States v. McKinney*, No. CR18-096RSM, 2020 WL 6076898, at *4 (W.D. Wash. Oct. 15, 2020). Under the BOP program statement, "'incapacitation' means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver *incapable* of caring for the child." BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 7 (emphasis

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 9

1  added). "The guidance states that information and documentation must be provided showing the
2  incapacitation of the caregiver, that the caregiver is the only family member capable of caring
3  for the child, verifiable documentation that the inmate is the parent of the child, verifiable
4  documentation providing name and age of the child, and a release plan." *McKinney*, 2020 WL
5  6076898, at *5 (quoting BOP Program Statement § 5050.50, at 7). The burden of establishing
6  incapacitation is on the defendant. *United States v. Woodberry*, No. 2:18-CR-00049-RAJ, 2022
7  WL 1803334, at *2 (W.D. Wash. June 1, 2022).

   The Court is sympathetic to Sanford's complications following surgery, and it accepts that defendant's absence from his daughter's life is impactful and undoubtedly places a heavy burden on his daughter's mother. However, the defendant fails to submit evidence sufficient to show that Sanford's condition rises to the level of "incapacitation." The record reflects that, as of June 2023, Sanford is on pain medication following a leg injury she sustained over a year ago. *See* Dkts. # 251-11, 251-2, 250-2. Although the evidence sufficiently shows that Sanford is facing health challenges that complicate her caregiving duties, it does not show that Sanford is "incapable" of caring for their daughter. Ultimately, a caregiver's difficulty in caring for a minor child is not the same as the inability to do so. While Sanford's condition warrants compassion, it is unclear that a reduction in sentence is the proper remedy.

   Because of the sparse evidence on the record, this Court cannot find that Sanford is incapacitated, and therefore, defendant failed to show that his parental responsibilities warrant compassionate release.

   **B. Section 3553(a) Factors**

   Defendant argues that Section 3553(a) factors weigh in favor of reducing his sentence because he served roughly half of his sentence, he will positively impact his community upon return, and he has a "strong and viable release plan." Dkt. # 249 at 20–24. The Court finds that Section 3553(a) factors weigh heavily against release.

   In the context of compassionate release, relevant factors include: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," (ii) the need for the sentence imposed (1) "to reflect the seriousness of the offense, to promote respect for the

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 10

law, and to provide just punishment for the offense," (2) to adequately deter criminal conduct and "to protect the public from further crimes of the defendant," and (3) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," (iv) the sentencing guidelines, and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a); *see also United States v. Grimes*, No. CR11-5509-BHS, 2021 WL 319404, *3 (W.D. Wash. Jan. 26, 2021).

Here, the nature and circumstances of the offense, along with defendant's criminal history, weigh against compassionate release. In the instant offense, defendant sold an undercover agent and confidential informant three stolen guns, organized a deal to buy $100,000 worth of cocaine, and arrived at the drug deal with a loaded gun. Dkt. # 83 at 8–9. He also paid an undercover agent $200 to destroy a car defendant believed was used in a hit and run. Dkt. # 157 at 10–11. Defendant's criminal history is equally concerning. He has three prior adult convictions for attempting to possess and possessing a firearm unlawfully and numerous convictions for other serious and violent crimes. Dkt. # 157 at 7–10. Defendant's sentence adequately reflects the seriousness of the offense and accounts for the need to promote respect for the law, deter similar conduct, and provide just punishment. Taking all those circumstances into consideration, section 3553(a) factors weigh heavily against early release. Accordingly, the Court denies defendant's motion for compassionate release.

### V.   Conclusion

For all the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's motion for compassionate release (Dkt. # 249) is DENIED.
2. Defendant's motion for expedited hearing (Dkt. # 250) is DENIED.
3. Defendant's motion for extension of time to file reply (Dkt. # 259) is GRANTED.
4. Government's motion to file an overlength brief (Dkt. # 255) is GRANTED.
5. Government's motion to seal (Dkt. # 256) is GRANTED.

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE - 11

IT IS SO ORDERED.

DATED this 25th day of March, 2024.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge